G. Vaughn Stone and Christine Stone,
Plaintiffs-Respondents,

Humana Wisconsin Health Organization Insurance
Corporation, Involuntary-Plaintiff-Respondent,

v.

Acuity, a mutual insurance company,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2005AP1629. Oral argument October 4, 2007.
—Decided April 11, 2008.*

2008 WI 30

(Also reported in 747 N.W.2d 149.)

560

For the defendant-appellant-petitioner there were briefs by *Arthur P. Simpson, Michelle D. Johnson,* and *Simpson & Deardorff, S.C.*, Milwaukee, and oral argument by *Arthur P. Simpson.*

For the plaintiffs-respondents there were briefs by *William A. Jennaro, Thomas J. Lonzo,* and *Cook & Franke S.C.,* Milwaukee, and oral argument by *Thomas J. Lonzo.*

Amicus curiae briefs were filed by *Michael R. Vescio, Mark K. Longua,* and *SmithAmundsen LLC,* Milwaukee, on behalf of Wisconsin Insurance Alliance and Continental Insurance Company.

Amicus curiae briefs were filed by *Lora A. Kaebler* and *End, Hierseman & Crain LLC,* Milwaukee; *Charles D. Smith* and *Cannon & Dunphy, S.C.,* Brookfield; and *Charles C. Gleisner, III* and the *Law Offices of William C. Gleisner,* Milwaukee; on behalf of the Wisconsin Academy of Trial Lawyers.

Amicus curiae briefs were filed by *Lynn R. Laufenberg* and *Laufenberg & Hoefle, S.C.*, Milwaukee, on behalf of Karen Korb.

¶ 1. ANN WALSH BRADLEY, J. The petitioner, Acuity, seeks review of a published court of appeals decision affirming orders of the circuit court for Milwaukee County that denied Acuity's motions for summary judgment and reconsideration and that awarded G. Vaughn Stone and Christine Stone $500,000 pursuant to the parties' stipulation.[1] Acuity contends that the court of appeals erred in its conclusions (1) that Acuity violated Wis. Stat. § 632.32(4m) (2005–06)[2] by failing to provide the Stones with notice of the availability of underinsured motorist (UIM) coverage, and (2) that as a remedy, the Stones are entitled to have their umbrella insurance policy reformed to provide retroactive UIM coverage. It further asserts that the circuit court erred in its determination that the policy was contextually ambiguous.

¶ 2. Relying on precedent, we conclude that by failing to provide the Stones with notice of the availability of UIM coverage as part of their umbrella insurance, Acuity violated the notice provision of § 632.32(4m). We further determine that where an insurer fails to provide notice of the availability of UIM coverage as part of an insurance policy, the appropriate

---

[1] *See Stone v. Acuity,* 2006 WI App 205, 296 Wis. 2d 240, 723 N.W.2d 766, affirming orders of the circuit court of Milwaukee County. The Honorable Mel Flanagan denied Acuity's motion for summary judgment. The Honorable Christopher R. Foley denied Acuity's motion for reconsideration and granted the order awarding the Stones $500,000.

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

remedy is to read in the level of coverage necessary for the policy to conform to § 632.32(4m)(d)—$50,000 per person and $100,000 per accident.

¶ 3. In the present case, however, the Stones' recovery is set by a stipulation between the parties, and we honor their agreement. Because we determine that insurance coverage exists from Acuity, under the plain language of the stipulation $500,000 is the amount Acuity must pay for the injuries and damages sustained by the Stones. Having decided the case on the basis of the statute and stipulation, we need not reach the question of whether the Stones' policy is contextually ambiguous. Accordingly, we affirm the court of appeals, but with different rationale.

I

¶ 4. This case arises out of an automobile-bicycle accident. G. Vaughn Stone was riding his bicycle when he was hit by a van driven by Alyce Lange. Stone sustained multiple fractures and dislocations and a collapsed lung. He underwent multiple surgical procedures and was hospitalized for approximately three weeks. Shortly after being released from the hospital, he suffered a stroke as a result of complications from his injuries. He then entered a rehabilitation hospital, where he was an inpatient for over a month. He continued to receive therapy and care after his release.

¶ 5. The Stones had automobile liability insurance with Acuity, including underinsured motorist (UIM) coverage. Both had limits of $300,000. They also had umbrella insurance with Acuity. The declaration section of the Stones' insurance policy lists "Personal Umbrella Liability Insurance" with a limit of $1 million.

The declaration section also contains an entry for "Wisconsin Personal Umbrella" in a subsection labeled "Forms."

¶ 6. Later in the policy, the coverage provided by "Wisconsin Personal Umbrella" is described in a section labeled "Endorsements." It states that "[w]e will pay sums in excess of the primary limit that an insured is legally obligated to pay as damages because of personal injury or property damage caused by an occurrence to which this insurance applies." As "Primary Insurance for Umbrella," the policy lists two items: "Personal Liability Exposure" and "Auto Liability Exposure."

¶ 7. Acuity originally issued the Stones' auto insurance and personal umbrella endorsement in April 1993. Beginning in 1996, Acuity sent out notices of availability of UIM coverage on auto renewal policies in order to comply with revisions to Wis. Stat. § 632.32(4m). However, at that time Acuity did not offer UIM coverage for personal umbrella policies similar to the Stones'.

¶ 8. In 1999 Acuity began offering UIM coverage for its personal umbrella policies. It then provided notice of the availability of such coverage to new applicants. However, it did not provide notice of the availability of the coverage to existing personal umbrella policyholders such as the Stones. Thus, the Stones never received notice that UIM coverage was available as part of their umbrella insurance.

¶ 9. The Stones brought this action to recover from Lange and her insurer and under their Acuity insurance policy. Acuity filed a motion for summary judgment with the circuit court. It asserted that it did not provide UIM coverage to the Stones because, first, Lange was not an underinsured motorist, and second, the Stones' umbrella insurance extended only to per-

sonal liability and auto liability exposure. The Stones countered by arguing that their umbrella insurance with Acuity was contextually ambiguous with respect to whether it provided UIM coverage.

¶ 10. The circuit court denied Acuity's summary judgment motion. It determined that the Stones' insurance policy was contextually ambiguous as to whether it provided UIM coverage. The umbrella coverage was listed under the "forms" heading rather than under an "endorsement" heading in the policy declarations, the policy contained no specific exclusion of UIM coverage, and the policy left the impression that the umbrella policy is "excess over all other available insurance . . . ."

¶ 11. Acuity filed a motion for reconsideration. Prior to the circuit court's hearing on Acuity's motion, the court of appeals ordered to be published its opinion in *Rebernick v. Wausau Gen. Ins. Co.*, 2005 WI App 15, 278 Wis. 2d 461, 692 N.W.2d 348.[3] In that case, the court of appeals determined that the requirement under Wis. Stat. § 632.32(4m) that insurers provide notice of the availability of UIM insurance can apply to personal umbrella insurance.

¶ 12. The Stones submitted a letter alerting the circuit court and Acuity of the *Rebernick* decision and asserting that they had not received notice of the availability of UIM umbrella coverage as required under § 632.32(4m) and *Rebernick*. Acuity responded by letter, arguing that the notice provision of § 632.32(4m) does not provide a "basis for creating a million dollars in further coverage."

---

[3] As discussed below, this court affirmed the court of appeals decision. *Rebernick v. Wausau Gen. Ins. Co.*, 2006 WI 27, 289 Wis. 2d 324, 711 N.W.2d 621.

¶ 13. At the reconsideration hearing, the parties argued the import of the court of appeals decision in *Rebernick*. The Stones discussed the court of appeals' holding and argued that Acuity failed to provide the required notice. The Stones noted that the majority of the court of appeals had left open the question of the appropriate remedy for failure to provide adequate notice under the statute.

¶ 14. The court referenced *Rebernick* in its discussion at the motion for reconsideration hearing. However, it denied the motion without altering the original decision, which was based on contextual ambiguity.

¶ 15. The Stones then reached a settlement agreement with Lange and her insurer. Pursuant to the agreement, they entered into a stipulation dismissing all claims with respect to Lange and her insurer. In exchange, the Stones received $500,000 from Lange's insurer and $10,000 from Lange.

¶ 16. Before going to trial, the Stones and Acuity also reached a stipulation. It provided that a judgment be entered in favor of the Stones for $500,000 against Acuity and reserved Acuity's right to appeal the denial of its motion for summary judgment and motion for reconsideration of that denial. The stipulation and final order provide in relevant part:

> WHEREAS, defendant ACUITY as an alleged insurer for plaintiffs and plaintiffs having negotiated an agreement as to the amount plaintiffs G. Vaughn Stone and Christine Stone, would be entitled to receive from ACUITY with the understanding that such agreement does not waive any rights of appeal of ACUITY with respect to the decisions on ACUITY's Motion for Summary Judgment and Motion to Reconsider; and

WHEREAS, ACUITY and plaintiffs having agreed that the amount in addition to the $510,000 previously paid [by Lange and Lange's insurer] would be the sum of $500,000; and

WHEREAS, the parties having agreed that the $500,000 figure would be the amount that ACUITY would pay for the injuries and damages sustained by G. Vaughn Stone and Christine Stone in the event insurance coverage is found on appeal to exist from ACUITY;

WHEREAS, the parties understand that this payment by ACUITY would include payment with respect to any subrogation claims that might exist, with G. Vaughan Stone and Christine Stone as well as any subrogated entities all reserving their rights to litigate any entitlement of the subrogated parties to recover damages from the $500,000 if that money is ultimately paid. Specifically, but without limitation, plaintiffs reserve the right to argue that they have not been made whole.

¶ 17. Acuity appealed. The court of appeals, however, did not address whether the circuit court erred in concluding that the Stones' umbrella endorsement was contextually ambiguous. *Stone v. Acuity,* 2006 WI App 205, ¶ 2, 296 Wis. 2d 240, 723 N.W.2d 766. Rather, it affirmed the circuit court's orders on the ground that Acuity failed to comply with Wis. Stat. § 632.32(4m). *Id.* Relying on this court's recent decision in *Rebernick v. Wausau Gen. Ins. Co.,* 2006 WI 27, 289 Wis. 2d 324, 711 N.W.2d 621, the court of appeals determined that Acuity violated § 632.32(4m) by failing to provide the Stones with notice that UIM coverage was available as part of their umbrella insurance. *Stone,* 296 Wis. 2d 240, ¶¶ 5–6.

¶ 18. The court of appeals further determined that the appropriate remedy for Acuity's violation of the statute was reformation of the Stones' umbrella en-

568

dorsement to provide UIM coverage. *Id.*, ¶ 7. It agreed with the view set forth in *Rebernick* that whether a violation of § 632.32(4m) requires that an insurer provide retroactive UIM coverage depends upon whether the insured would have purchased such coverage had notice been provided. *Id.*, ¶ 8; *see Rebernick,* 289 Wis. 2d 324, ¶ 58 (Butler, J., dissenting). However, it determined that on this record there was no genuine issue of fact as to whether the Stones would have purchased UIM coverage as part of their umbrella insurance. Thus, the court of appeals concluded that the Stones were entitled to UIM coverage as part of their umbrella insurance, retroactive to 1999. *Id.*

¶ 19. Acuity petitioned for review. After the case was argued before this court, we requested supplemental briefs on the issue of remedy and the effect of the parties' stipulation.[4]

## II

¶ 20. This case requires that we determine whether Acuity violated Wis. Stat. § 632.32(4m) by failing to provide the Stones with notice of the availability of UIM coverage as part of their umbrella endorsement. If so, we must determine the appropriate remedy for such a violation. This requires that we

---

[4] The Stones filed a motion to strike portions of Acuity's supplemental briefs pursuant to Wis. Stat. §§ 802.06(6), 809.63, and 809.84. This court had ordered supplemental briefing to address specific questions concerning the remedy for failure to give notice under Wis. Stat. § 632.32(4m). The Stones contend that sections I and II of Acuity's brief simply reiterate arguments made in Acuity's initial brief to this court and are therefore redundant. We agree, and the Stones' motion to strike sections I and II of Acuity's supplemental brief is granted.

interpret Wisconsin's UIM statutes. Statutory interpretation presents questions of law that we review independently of the determinations of the circuit court and court of appeals. *Haferman v. St. Clare Healthcare Found., Inc.,* 2005 WI 171, ¶ 15, 286 Wis. 2d 621, 707 N.W.2d 853.

¶ 21. Further, we must construe a stipulation between the parties. The interpretation of a stipulation is also a question of law that we review independently. *Duhame v. Duhame,* 154 Wis. 2d 258, 262, 453 N.W.2d 149 (Ct. App. 1989).

### III

¶ 22. We begin our analysis by examining the statutes. Wisconsin Stat. § 632.32(4m)(a)[5] requires that insurers writing motor vehicle liability policies that do not contain UIM coverage provide policyholders notice

---

[5] The full text of Wis. Stat. § 632.32(4m)(a) is as follows:

1. An insurer writing policies that insure with respect to a motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by a person arising out of the ownership, maintenance or use of a motor vehicle shall provide to one insured under each such insurance policy that goes into effect after October 1, 1995, that is written by the insurer and that does not include underinsured motorist coverage written notice of the availability of underinsured motorist coverage, including a brief description of the coverage. An insurer is required to provide the notice required under this subdivision only one time and in conjunction with the delivery of the policy.

2. An insurer under subd. 1. shall provide to one insured under each insurance policy described in subd. 1. that is in effect on October 1, 1995, that is written by the insurer and that does not include underinsured motorist coverage written notice of the availability of underinsured motorist coverage, including a brief description of the coverage. An insurer is required to provide the notice required under this subdivision only one time and in

of the availability of UIM coverage. The statute states in relevant part:

> 1. An insurer writing policies that insure with respect to a motor vehicle . . . against loss resulting from liability imposed by law . . . shall provide to one insured under each such insurance policy . . . that is written by the insurer and that does not include underinsured motorist coverage written notice of the availability of underinsured motorist coverage including a brief description of the coverage. . . .

¶ 23. This court recently addressed the application of § 632.32(4m) to umbrella insurance policies. In *Rebernick,* we determined that in enacting § 632.32(4m) the legislature intended that "where UIM coverage is available, insureds should know about it." 289 Wis. 2d 324, ¶ 25. It also sought to "aid consumers in making responsible and informed decisions about the nature and amount of insurance coverage they may need." *Id.,* ¶ 30.

¶ 24. Because the Rebernicks' umbrella policy included auto liability coverage, it fell within the scope of § 632.32. *Id.,* ¶ 15; *see* Wis. Stat. § 632.32(1) (addressing scope of § 632.32). Further, because the umbrella policy at issue provided insurance "against loss resulting from liability imposed by law for bodily injury or death arising out of the ownership, maintenance or use of a motor vehicle," it fell within the scope of § 632.32(4m). We therefore determined that the insurer was required to provide the Rebernicks with notice of the availability of UIM coverage under their umbrella policy. *Id.,* ¶ 21.[6]

conjunction with the notice of the first renewal of each policy occurring after 120 days after October 1, 1995.

[6] We note that Wis. Admin. Code § Ins 6.77(4)(a)(June 2007) provides that "Any umbrella liability or excess liability

¶ 25. Ultimately, however, we concluded that the insurer had provided the Rebernicks with notice under § 632.32(4m). One week before issuing the umbrella policy, the insurer provided a general notice regarding the availability of UIM in its policies. This, coupled with the specific exclusion of UIM coverage in the umbrella policy, sufficed to alert the Rebernicks of the availability of UIM coverage under an umbrella policy. *Id.*, ¶¶ 34–36.

¶ 26. Thus, under *Rebernick,* it is clear that insurers must provide notice of the availability of UIM coverage under umbrella policies that insure against liability "for loss or damage resulting from accident caused by any motor vehicle," § 632.32(1), and "against loss resulting from liability imposed by law for bodily injury or death suffered by a person arising out of the ownership, maintenance or use of a motor vehicle," § 632.32(4m). There is no dispute that in this case, the Stones' umbrella coverage applies to motor vehicle liability coverage.

¶ 27. Nonetheless, Acuity maintains that it was not required to provide the Stones with notice when it began offering umbrella UIM coverage. It argues that the Stones' umbrella coverage is not a policy within the meaning of the statute. Rather, it is merely an endorsement to their policy.

¶ 28. Acuity's argument is unpersuasive. To begin, the Stones' policy is equivocal as to whether their umbrella coverage is a "form" or an "endorsement." In the declarations section of the Stones' insurance policy,

insurance policy is exempt from the requirements of ss. *631.36(2)(a)* and *632.32 (4),* Stats." We do not address here the authority to enact such a rule.

572

Acuity lists the umbrella coverage in a section called "Forms." Later in the policy, Acuity describes the umbrella coverage in a section labeled "endorsements." Wisconsin Stat. § 600.03(21) is clear that a "form" may constitute a policy:

> "Form" means a *policy,* group certificate, or application prepared for general use and does not include one specially prepared for use in an individual case. See also "policy".

(Emphasis added).

¶ 29. Even if the Stones' umbrella coverage is an "endorsement" rather than a "form," Wis. Stat. § 600.03(35) allows that an endorsement may constitute a policy. It provides:

> "Policy" means any document other than a group certificate used to prescribe in writing the terms of an insurance contract, including endorsements and riders and service contracts issued by motor clubs.

¶ 30. Acuity's own analysis of the umbrella coverage provides further reason to treat it as a "policy" under § 632.32(4m). In a memorandum incorporated into an affidavit, an Acuity analyst describes the company's Personal Umbrella coverage (the type held by the Stones) as constituting a "policy." The analyst states that "back in 1996 we did not offer the Excess Uninsured Motorists Bodily Injury and Underinsured Motorists coverage endorsement to the *Personal Umbrella policy.*" (Emphasis added). He also notes that when Acuity began offering UIM coverage as part of the Personal Umbrella policies, "[t]here was no special notice of the availability of this endorsement sent to our existing Personal Umbrella policyholders." Thus, the Acuity analyst viewed the umbrella coverage carried by

the Stones as a policy and viewed people with such umbrella coverage as policyholders.

¶ 31. Moreover, in the memorandum the analyst makes it clear that the umbrella coverage carried by the Stones was available to be purchased separately from an Acuity auto policy. "Let me know if you think there is anything that should be modified to clarify coverage, particularly in the situation where we might have a separate ACUITY Auto policy and Personal Umbrella policy." Thus, while the Stones purchased their auto coverage and umbrella coverage at the same time and as a single unit, the record indicates that they could have purchased them at different times and as discrete policies.

¶ 32. Under Wis. Stat. § 600.12(1), "chs. 600 to 655 shall be liberally construed to achieve the purposes stated therein." The purpose of § 632.32 is to "assure insurance coverage to accident victims" and it "must be broadly construed so as to increase rather than limit coverage." *Kettner v. Wausau Ins. Cos.,* 191 Wis. 2d 723, 742, 530 N.W.2d 399 (Ct. App. 1995)(internal citation omitted); *Home Ins. Co. v. Phillips,* 175 Wis. 2d 104, 112, 499 N.W.2d 193 (Ct. App. 1993). More specifically, "a central purpose of § 632.32(4m) is to ensure that all insureds know of the availability of UIM coverage." *Rebernick,* 289 Wis. 2d 324, ¶ 25.

¶ 33. In examining the statutes and applying these interpretive principles to the facts of this case, we determine that the Stones' umbrella coverage constitutes a policy under the meaning of § 632.32(4m). Interpreting the umbrella coverage as a policy both increases coverage and furthers the purpose of ensuring that insureds know of the availability of UIM coverage.

574

¶ 34. In the alternative, Acuity claims that even if the umbrella coverage constitutes a policy within the meaning of § 632.32(4m), it actually did provide the Stones with the required notice of availability of UIM insurance. Beginning in January 1996, Acuity sent notice of the availability of UIM coverage to all of its automobile policy renewals. Such notice was sent even to those policyholders who, like the Stones, already had UIM coverage in their personal automobile liability policy. That notice did not differentiate between UIM coverage for an underlying policy or an umbrella policy. Because § 632.32(4m)(a)2. requires that the insurer provide notice "only one time," Acuity contends that its notice was sufficient.

¶ 35. This argument is also unpersuasive. We have already determined that the umbrella coverage is a policy within the meaning of § 632.32(4m), and that notice of availability of UIM coverage for that policy is required. However, Acuity did not begin offering UIM coverage under its Personal Umbrella policies until 1999. It would be meaningless to provide notice of the availability of UIM umbrella coverage when that type of coverage was in fact not available.

■■

¶ 36. Moreover, allowing the earlier notice to suffice as notice of the availability of UIM umbrella coverage three years hence runs counter to our instruction in *Rebernick* that "where UIM coverage is available, insureds should know about it." 289 Wis. 2d 324, ¶ 25. UIM umbrella coverage became available in 1999, and a notice sent three years prior does not let insureds know about it becoming available. The notice sent out for the Stones' personal automobile policy renewal therefore does not satisfy the requirements of § 632.32(4m).

¶ 37. Thus, the Stones' umbrella insurance applies to motor vehicle liability and constitutes a policy within the meaning of § 632.32(4m). Acuity was therefore required to provide notice of the availability of UIM coverage under that policy. Because it failed to provide such notice, Acuity violated the mandate of the statute.

## IV

¶ 38. Having concluded that Acuity violated § 632.32(4m) by failing to provide the Stones with notice of the availability of UIM coverage on their umbrella policy, there remains a question of the appropriate remedy for such a violation. Under Wis. Stat. § 631.15(3m), a "policy that violates a statute or rule is enforceable against the insurer as if it conformed to the statute or rule."

¶ 39. Citing the dissent in *Rebernick*, the court of appeals determined that whether a violation of the notice provision in § 632.32(4m) requires retroactive UIM coverage depends on whether the insureds would have purchased such coverage had notice been provided. 296 Wis. 2d 240, ¶ 8 (citing *Rebernick*, 289 Wis. 2d 324, ¶ 58 (Butler, J. dissenting)).[7] The court of appeals concluded that there was no genuine issue of fact as to whether the Stones would have actually purchased UIM umbrella coverage had Acuity provided the required notice. *Id.*, ¶ 8. It based its conclusion on

---

[7] The majority in *Rebernick* determined that the insurer had given the Rebernicks notice of the availability of UIM coverage. *Rebernick v. Wausau Gen. Ins. Co.*, 2006 WI 27, ¶¶ 34–36, 289 Wis. 2d 324, 711 N.W.2d 621. It therefore did not reach the issue of remedy. Because the dissent concluded that the insurer did not provide notice, it addressed remedy. *Id.*, ¶ 41 (Butler, J., dissenting).

Acuity's failure to contend that the Stones would not have purchased UIM coverage under their umbrella insurance and the fact that the Stones had indeed purchased $300,000 of UIM coverage in their underlying policy.

¶ 40. We disagree with the court of appeals' determination that there is no genuine issue of fact as to whether the Stones would have purchased UIM umbrella coverage. The mere fact that the Stones purchased $300,000 of UIM coverage in their underlying policy is insufficient to show that they would have paid more in premiums to purchase UIM umbrella coverage.

¶ 41. More importantly we disagree that enforcing the insurance contract as if it conformed to § 632.32(4m) even requires a factual determination of whether the Stones would have purchased UIM umbrella coverage. Instead we determine that enforcing the Stones' policy "as if it conformed to" § 632.32(4m) requires that we examine what is the appropriate remedy under the statute.

¶ 42. One possibility for remedy is that enforcing the policy as if it conformed to § 632.32(4m) demands that Acuity provide retroactive coverage in the amount of the umbrella policy limits. A second possibility for remedy is that enforcing the policy as if it conformed to § 632.32(4m) requires that Acuity provide retroactive coverage only at the minimum level of coverage set forth in the statute.

¶ 43. Section 632.32(4m)(d) provides as follows:

> If an insured who is notified under par. (a) 1. accepts underinsured motorist coverage, the insurer shall include the coverage under the policy just delivered to the insured in limits of at least $50,000 per person and $100,000 per accident. For any insured who accepts the coverage after notification under par. (a) 2., the insurer

shall include the coverage under the renewed policy in limits of at least $50,000 per person and $100,000 per accident.

Thus, had the Stones accepted UIM coverage pursuant to § 632.32(4m)(a), Acuity would have been obligated to provide UIM coverage of at least $50,000 per person and $100,000 per accident.

¶ 44. This court applied § 631.15(3m) to an insurance policy that failed to comply with § 632.32(4m)(d) in *Brunson v. Ward*, 2001 WI 89, 245 Wis. 2d 163, 629 N.W.2d 140. In that case an insured had UIM coverage in the amount of $25,000 per person and $50,000 per accident. *Id.*, ¶ 4. However, that coverage level did not comport with the minimum requirements under § 632.32(4m)(d) of $50,000 per person and $100,000 per accident. We determined that the policy must be read to provide the level of coverage required under the statute. "By operation of law, the higher level of coverage is 'read in,' even though it was not reflected in the premium paid." *Id.*, ¶ 24.

¶ 45. *Brunson* provides only limited guidance. The statutory violation in *Brunson* was a failure to provide sufficient UIM coverage to a policy that already provided some UIM coverage. Here, the statutory violation is a failure to provide notice of availability, and the question is how much coverage to provide if coverage is warranted at all.

¶ 46. The legislative history provides no further guidance. As we noted in *Rebernick*, the bill that led to § 632.32(4m) being adopted concerned "stacking" of motor vehicle coverage and "drive-other-car" provisions in motor vehicle policies. 289 Wis. 2d 324, ¶ 24. The drafting records regarding notification of the availability of UIM coverage are sparse, and provide no infor-

578

mation regarding coverage to be implied for failure to provide adequate notice. *See id.;* 1995 S.B. 6, Legislative Reference Bureau drafting file; *see also* 1995 Wis. Act 21.

¶ 47. Lacking clear authority from this state's case law and legislative history on the question of coverage, we turn to other sources for instruction. Two areas of jurisprudence provide some guidance: cases in which coverage is implied because of a failure to offer coverage as part of an auto liability policy and cases in which coverage is implied because of a failure to provide coverage as part of an umbrella policy.

¶ 48. First, there are a number of jurisdictions that have addressed insurers' failure to fulfill statutory requirements to make offers of uninsured motorist (UM) and UIM coverage as part of an automobile liability policy. A leading treatise on UM and UIM insurance summarizes the cases as follows.

> When underinsured motorist insurance coverage is imposed by operation of law because an insurance company failed to comply with a legislative mandate, questions sometimes arise about the coverage limits for the insurance. Typically, legislation mandates that when an insurer fails to prove an effective offer, the insurer must provide the minimum coverage required to be offered to the purchaser under the statute.

3 Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance,* § 32.7 (3d ed. 2005).

¶ 49. In *Tucker v. Country Mut. Ins. Co.,* for example, the Appellate Court of Illinois interpreted a statute providing that no automobile liability insurance may be issued "unless underinsured motorist coverage is offered in an amount equal to the insured's uninsured motorist coverage limits." 465 N.E.2d 956, 958 (Ill. App.

1984)(citing 1979 Ill. Laws 4771). It determined that where an insurer failed to make a sufficient offer under the statute, a proper remedy was to imply UIM coverage into a policy "by operation of law in limits equal to [the insured's] uninsured motorist coverage . . . ." *Id.* at 962.

¶ 50. In *Rutter v. The Horace Mann Ins. Co.*, 545 N.E.2d 1381 (Ill. App. Ct. 1989), the appellate court reiterated that view. Where there is a deficient offer of UIM coverage, the appropriate remedy is to imply UIM coverage with "limits equal to those of the uninsured-motorist coverage." *Id.* at 1387–88 (citing Ill. Rev. Stat. 1981, ch. 73, par. 755a — 2(4)); *see also Fuoss v. Auto Owners (Mut.) Ins. Co.*, 516 N.E.2d 268, 270 (Ill. 1987)("Should we reform Fuoss' policy in accordance with the Code, we could imply coverage at no more than either $15,000/$30,000 (as the circuit court did)—the amount of his uninsured limits—or $25,000/$50,000 (as the appellate court did)—the amount of his bodily injury liability insurance.")

¶ 51. The Illinois cases, however, interpret a statute different from Wis. Stat. § 632.32(4m)(d). The Illinois statute requires that insurers offer UIM in an amount equal to the insured's UM coverage. Section 632.32(4m)(d), however, requires that insurers providing UIM coverage offer it at least at a set minimum level—$50,000 per person, $100,000 per accident—for all insureds, regardless of the limits of the insured's liability and uninsured motorist coverage. This difference does not appear to change the analysis:

> Where the statute calls for underinsured motorist limits at least equal to statutory minimum liability limits, the insurer's obligation to provide underinsured motorist limits is limited to those required for minimum liability coverage, and there is no obligation to provide

underinsured motorist limits equal to the higher liability limits carried by the insured.

3 William J. Schermer & Irvin E. Schermer, *Automobile Liability Insurance,* § 38.28 (4th ed. 2004).

¶ 52. *Ross v. United Servs. Auto. Ass'n,* 899 S.W.2d 53 (Ark. 1995), is illustrative. In *Ross,* UIM coverage was implied by operation of law because the insured failed to obtain an adequate rejection of coverage. *Id.* at 54. Determining the amount of coverage implied required the court to interpret Ark. Code Ann. § 23–89–209 (1992), which provides that UIM coverage "shall be at least equal to the limits prescribed for bodily injury or death under [Ark. Code Ann.] § 27–19–605." *Id.* at 54–55. Section 27–19–605, in turn, requires $25,000 minimum liability coverage for bodily injury or death. *Id.* at 55. The court determined that the statutes mandate only that insurers offer $25,000 UIM coverage, and that when UIM is implied by law, "the insured will be limited to the minimum amount referred to in the statute of $25,000." *Id.* To require more would be to "force upon the insurance company something that is not present in the statute." *Id.* (quoting *Jablonski v. Mut. Serv. Cas. Ins. Co.,* 408 N.W.2d 854, 857–58 (Minn. 1987)).

¶ 53. These authorities all indicate that where an insurer fails to make an adequate offer of UIM coverage, and UIM coverage is therefore implied by operation of law, it is implied at a level equal to the minimum level required to be offered under the statute. This suggests that under Wisconsin law, implied UIM coverage should be at the level prescribed in § 632.32(4m)(d) —$50,000 per person and $100,000 per accident.

¶ 54. However, the above cases concern the failure to fulfill a statutory obligation to provide UIM insurance as part of a primary automobile liability

policy rather than as part of an umbrella policy. Because this case concerns umbrella coverage rather than a primary automobile liability policy, it is also useful to examine cases in which courts have determined that UIM coverage is implied because an insurer fails to offer UIM coverage as part of an umbrella policy. A number of jurisdictions have determined that where UIM coverage is implied in an umbrella policy, it will be implied at the full level of liability coverage provided by the umbrella policy.

¶ 55. In *Ormsbee v. Allstate Ins. Co.*, 859 P.2d 732 (Ariz. 1993), for example, the Arizona Supreme Court determined that an umbrella policy providing automobile liability coverage was an automobile liability policy within the meaning of state statutes. Arizona's UM/UIM statute required insurers to offer UIM coverage "in limits not less than the liability limits within the policy," *Id.* at 733 (citing Ariz. Rev. Stat. § 20–259.01(C)(1992)). The court determined that an insurer's failure to offer UIM coverage as part of an insured's umbrella policy resulted in "imputation" of the UIM coverage to the policy as a matter of law. *Id.* at 736.

¶ 56. The Northern District of Ohio has similarly concluded that umbrella policies that cover automobiles must provide UIM coverage at the full level of liability coverage under the policy. The court in *Krstich v. United Servs. Auto. Ass'n,* 776 F. Supp. 1225 (N.D. Ohio 1991) applied both Ohio and North Carolina UIM statutes to a $1 million umbrella policy. The Ohio statute stated that no automobile liability insurance could be issued unless it provided "[u]nderinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability" coverage. *Id.* at 1232–33 (quoting Ohio Rev. Code § 3937.18(A)(1990)).

¶ 57. The North Carolina statute required that any automobile liability policy "provide underinsured motorist coverage . . . in an amount equal to the policy limits for automobile bodily injury liability as specified in the . . . policy." *Id.* at 1234 (quoting N.C. Gen. Stats. § 20–279.21(b)(4)(1990)). The court determined that under both statutes, the insurer was required to provide UIM coverage with a limit of $1 million under the umbrella policy. *Id.* at 1235. *See also Am. Econ. Ins. Co. v. Canamore,* 834 P.2d 542, 544 (Or. Ct. App. 1992)(under statute requiring every motor vehicle policy to provide UIM, insurer's failure to offer UIM coverage required reforming policy to provide UIM coverage in the amount of umbrella policy's bodily injury limits); *United Nat'l Ins. Co. v. DePrizio,* 705 N.E.2d 455, 460–61 (Ind. 1999); Rhonda Sukin Kaye, *Requirement that Multicoverage Umbrella Insurance Policy Offer Uninsured- or Underinsured-motorist Coverage Equal to Liability Limits under Umbrella Provisions,* 52 A.L.R.5th 451, § 3 (1997)(collecting cases).

¶ 58. Thus, there are a number of instances in which courts have determined that where an insurer fails to provide UIM coverage in an umbrella policy, UIM coverage will be implied into the policy at the level of liability coverage offered by that policy. We note, however, that these cases are based upon statutes requiring automobile liability policies to provide UIM coverage in amounts equal to the liability limits of the policy. They therefore contrast with the present case because Wisconsin requires only that insurers who make UIM coverage available provide it at a statutory minimum level. Wis. Stat. § 632.32(4m)(d).

¶ 59. There do not appear to be any cases in which courts have determined that a statutory minimum level of UIM coverage, independent of the insured's liability

limit, is implied in an umbrella policy. Indeed, Wisconsin seems to be anomalous in interpreting a state statute that requires insurers to provide UIM coverage at a statutory minimum level as applying to umbrella policies. That is, the cases requiring insurers to provide UIM coverage in umbrella policies do so on the basis of statutes requiring insurers to provide UIM coverage at the liability limit of automobile policies.[8]

¶ 60. Nonetheless, the cases in which courts have determined that UIM coverage is implied where an insurer fails to provide UIM coverage as part of an umbrella policy are instructive. UIM coverage is generally implied at the full level of liability coverage in an umbrella policy where statutes require that *any* automobile liability policy provide UIM coverage at the full level of the insured's liability coverage. Wisconsin does not have such a requirement. Moreover, because the cases are based on statutes requiring UIM coverage at the full level of liability coverage, they actually imply UIM coverage at the only level recognized by statute for

---

[8] Several authorities assert that whether an umbrella policy may be considered an automobile policy such that it provides UM or UIM coverage reflects whether a state's UM/UIM statutes are "minimum liability" statutes (requiring insurers to provide coverage at a statutory minimum level independent of an insured's liability coverage) or "full recovery" statutes (requiring insurers to provide coverage at liability limits). Generally, courts have interpreted "minimum liability" statutes as not requiring umbrella policies to provide UM/UIM coverage, while courts have often (though not always) interpreted "full recovery" statutes as requiring umbrella policies to provide UM/UIM coverage. Lisa K. Gregory, *"Excess" or "Umbrella" Insurance Policy As Providing Coverage for Accidents with Uninsured or Underinsured Motorists*, 2 A.L.R.5th 922, §§ 2[a], 5[a] (1992); *United Nat'l Ins. Co. v. DePrizio*, 705 N.E.2d 455, 461–62 (Ind. 1999); *Ormsbee v. Allstate Ins. Co.*, 859 P.2d 732, 735 (Ariz. 1993).

motor vehicle liability policies. Wisconsin, though, recognizes UIM coverage at a lower level than the liability limits of a motor vehicle liability policy.

■

¶ 61. Having reviewed the foregoing authorities, we are persuaded that where an insurer fails to provide adequate notice of the availability of UIM coverage, the appropriate remedy is to read in only the minimum level of UIM coverage required under § 632.32(4m)(d) —$50,000 per person and $100,000 per accident. The sole Wisconsin case applying § 631.15(3m) to an insurance policy that did not comply with § 632.32(4m)(d) "reads in" the statutory minimum coverage. *Brunson,* 245 Wis. 2d 163, ¶ 24.

¶ 62. Further, in cases where insurers fail to offer UIM coverage as part of an automobile liability policy, the amount of UIM coverage implied depends upon whether state statutes require insurers to provide UIM coverage at a statutory minimum level or at the level of the insured's UM or liability coverage. Where, as in Wisconsin, insurers that provide UIM coverage must provide it at a statutory minimum level independent of the insured's liability limit, courts imply that minimum level. Higher levels are implied only where required by statute.

¶ 63. Finally, where courts imply UIM coverage in umbrella polices, they imply the coverage at the statutorily required level. This has generally resulted in implied UIM coverage at the level of coverage for the umbrella policy. However, this is because the relevant state statutes require motor vehicle liability policies to provide UIM coverage at the same level as the insured's liability coverage. In Wisconsin, insurers that provide

UIM coverage are required to do so only at a statutory minimum level, regardless of the insured's liability coverage.

¶ 64. We therefore conclude that pursuant to § 631.15(3m), enforcing the umbrella policy "as if it conformed to the statute" entitles the insureds to only the level of coverage necessary for their policy to conform to § 632.32(4m)(d)—$50,000 per person and $100,000 per accident. Accordingly, we read in that level of coverage to the Stones' umbrella insurance.

## V

¶ 65. Acuity has persuaded us that interpreting the Stones' policy as if it conformed to § 632.32(4m) requires reading in coverage at the statutory minimum level—$50,000 per person and $100,000 per accident. However, that determination does not end our inquiry. Rather, we must address the question of remedy in light of the stipulation between the parties.

¶ 66. After the circuit court denied Acuity's motion for reconsideration, and before trial, the parties entered into a stipulation. They agreed "that the $500,000 figure would be the amount that ACUITY would pay for the injuries and damages sustained by G. Vaughn Stone and Christine Stone in the event insurance coverage is found on appeal to exist from ACUITY . . . ."

¶ 67. We have recently held that "interpretation of a stipulation must, above all, give effect to the intention of the parties." *Pierce v. Physicians Ins. Co. of Wis., Inc.*, 2005 WI 14, ¶ 31, 278 Wis. 2d 82, 692 N.W.2d 558 (citing *D'Angelo v. Cornell Paperboard Prods. Co.*, 33 Wis. 2d 218, 227, 147 N.W.2d 321 (1967)). While

relief from stipulations is governed by Wis. Stat. § 806.07, principles of contract law apply in interpreting stipulations. *Kocinski v. Home Ins. Co.,* 154 Wis. 2d 56, 67–68, 452 N.W.2d 360 (1990). In determining the parties' intentions, the terms of a contract or stipulation "should be given their plain or ordinary meaning." *Huml v. Vlazny,* 2006 WI 87, ¶ 52, 293 Wis. 2d 169, 716 N.W.2d 807. If the agreement is not ambiguous, ascertaining the parties' intent "ends with the four corners of the contract, without consideration of extrinsic evidence." *Id.*

¶ 68. Because we have determined that interpreting the Stones' umbrella insurance as if it conformed to the statute requires reading in the statutory minimum UIM coverage, "insurance coverage is found on appeal to exist from Acuity." Thus, under the plain language of the stipulation, the amount Acuity must pay the Stones for their injuries is $500,000.

¶ 69. After the first round of oral arguments before this court, we issued an order requesting that the parties submit supplemental briefs addressing the issue of remedy, including the effect of the stipulation. Acuity argues the stipulation was based on the contextual ambiguity issue, and that the *Rebernick* issue "did not exist" at the time of the stipulation "other than as a Court of Appeals dissent." It maintains that Acuity should have the opportunity to litigate the "new theory."

¶ 70. We disagree. First, it is incorrect that at the time the parties entered into the stipulation the *Rebernick* issue existed only in a court of appeals dissent. The majority of the court of appeals in *Rebernick* agreed that insurers are required to provide notice of the availability of umbrella UIM coverage. 278 Wis. 2d 461, ¶ 8. The court did not read in UIM coverage because it

determined that the insurer had provided notice. *Id.*, ¶ 13. That was the same determination made by this court on review. 289 Wis. 2d 324, ¶ 39.

¶ 71. Moreover, before entering into the stipulation, the parties submitted letters to the circuit court regarding the applicability of the court of appeals' decision in *Rebernick*. At the hearing on Acuity's motion for reconsideration, both parties addressed the import of *Rebernick*. The circuit court considered *Rebernick* in its deliberations on the motion for reconsideration.

¶ 72. In addition, the stipulation has no language stating that Acuity will pay $500,000 if coverage is found to exist because the policy is contextually ambiguous. Rather, its terms are general, applying "in the event insurance coverage is found on appeal to exist from Acuity." It is therefore unpersuasive that the parties intended the stipulation to operate only if the case were decided on the grounds of contextual ambiguity.[9]

¶ 73. Rather, in entering into the stipulation Acuity avoided the potential for even greater exposure due to the $1 million limit and the lack of a reducing clause in the Stones' umbrella policy. One of the key disputes in Acuity's motion for reconsideration and in the hear-

---

[9] Justice Roggensack's concurrence/dissent maintains that the language of the stipulation is ambiguous because of its general language. ("Because of the general language in which the stipulation is phrased, reasonable people could disagree about the meaning of the document." Justice Roggensack's concurrence/dissent, ¶ 91.) In essence, it argues that because the language of the stipulation is worded so broadly as to require payment in any case that coverage is found to exist on appeal, it can be interpreted as requiring payment only in a narrow range of cases in which coverage is found to exist. That view turns the plain language of the stipulation on its head.

ing on that motion was whether umbrella UIM coverage should be read to include a reducing clause, even though neither the Stones' umbrella policy nor the UIM endorsement to personal umbrella coverage that the Stones could have purchased contained a reducing clause. Thus, the stipulation avoided a dispute over whether, if coverage was found to exist on appeal, such coverage was subject to a reducing clause. Acuity therefore avoided the potential that it would have to pay the full $1 million limit of the policy should an appellate court determine that the coverage was not subject to a reducing clause.

¶ 74. We are also not persuaded by Acuity's argument that it should be allowed to litigate the *Rebernick* theory. The interpretation of the terms of a stipulation, like the interpretation of the terms of a contract, is a question of law. *Duhame,* 154 Wis. 2d at 262. Thus, we need not remand the case to the circuit court for the parties to litigate the interpretation of the stipulation, which is clear on its face. Acuity has already had the opportunity to argue the issue in its supplemental briefs.

¶ 75. The circuit court determined that the Stones were entitled to UIM coverage under their umbrella insurance because their policy was contextually ambiguous, and the Stones have continued to maintain that their policy is contextually ambiguous. However, because we determine that insurance coverage exists due to Acuity's failure to provide adequate notice under § 632.32(4m) and that the amount set forth in the stipulation controls, we need not reach the question of whether insurance coverage also exists on the ground that the policy was contextually ambiguous.

¶ 76. Having determined that where an insurer fails to provide adequate notice of the availability of

589

UIM coverage, the appropriate remedy is to read in the minimum level of UIM coverage required under § 632.32(4m)(d)—$50,000 per person and $100,000 per accident, coverage has been found to exist on appeal from Acuity. Thus, under the plain language of the stipulation $500,000 is the amount that Acuity must pay for the injuries sustained by the Stones.

## VI

¶ 77. In sum, relying on precedent, we conclude that by failing to provide the Stones with notice of the availability of UIM coverage as part of their umbrella insurance, Acuity violated the notice provision of § 632.32(4m). We further determine that where an insurer fails to provide notice of the availability of UIM coverage as part of an insurance policy, the appropriate remedy is to read in the level of coverage necessary for the policy to conform to § 632.32(4m)(d)—$50,000 per person and $100,000 per accident.

¶ 78. In the present case, however, the Stones' recovery is set by a stipulation between the parties, and we honor their agreement. Because we determine that insurance coverage exists from Acuity, under the plain language of the stipulation $500,000 is the amount Acuity must pay for the injuries and damages sustained by the Stones. Having decided the case on the basis of the statute and stipulation, we do not reach the question of whether the Stones' policy is contextually ambiguous. Accordingly, we affirm the court of appeals, but with different rationale.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 79. Justice ANNETTE KINGSLAND ZIEGLER did not participate.

590

¶ 80. PATIENCE DRAKE ROGGENSACK, J. (*concurring in part, dissenting in part*). I join the majority opinion except for those portions of that opinion that interpret the stipulation between G. Vaughn Stone and Christine Stone (the Stones) and Acuity, a Mutual Insurance Company (Acuity), as requiring Acuity to provide $500,000 in underinsured motorist (UIM) payments to the Stones under the umbrella policy Acuity issued. I respectfully dissent from the majority opinion's discussion and conclusions relative to the stipulation for three reasons: (1) the stipulation is ambiguous as to the parties' intent; (2) the majority opinion unreasonably interprets the parties' stipulation to effect an unwarranted penalty against Acuity; and (3) in the alternative, even were I to agree with the majority opinion's interpretation of the stipulation, fairness requires that the penalty to which Acuity should be subjected for failing to comply with Wis. Stat. § 632.32(4m)(a)1 be referred to the circuit court so that Acuity can bring a motion pursuant to Wis. Stat. § 806.07(1), to request relief from the stipulation, in order that Acuity be treated the same as would any other insurer who did not give the notice required by § 632.32(4m)(a)1.

## I. BACKGROUND

¶ 81. The background facts relating to the stipulation between the Stones and Acuity are quite brief. The parties agreed after the circuit court had denied Acuity's motion for summary judgment and had denied Acuity's motion for reconsideration, that if the decision of the circuit court was reversed, the level of damages sustained by the Stones would require Acuity to pay an additional $500,000.

¶ 82. In its denial of Acuity's motion for summary judgment, the circuit court decided that UIM coverage

was afforded because the umbrella policy was contextually ambiguous. As the circuit court explained:

> We—The umbrella policy here—The question is—is it the—insured left with the impression that the umbrella policy is excess over all other available insurance?
>
> . . .
>
> And I—I think it's a very close call, but I think that the Court, reviewing everything, is persuaded by the presentation and argument of the plaintiff, that there is an ambiguity in this policy that would work to the detriment of the insured, and I am going to deny the motion for summary judgment and the motion filed by Acuity.
>
> I think that the other issues, being whether there is—there is—there are damages that have been—that —I—it seems to me, that based on what you have alleged the medicals to be, the loss of employment to be, the potential, here, that there is a potential for—for the coverage, and there is an ambiguity in the policy such that the Court would not dismiss the action against Acuity.

Because of that contextual ambiguity in the policy, subject to the reducing clause which was upheld as part of the circuit court's denial of Acuity's motion for reconsideration, the circuit court concluded that $1,000,000 of potential UIM coverage existed under the umbrella policy.

¶ 83. The Stones and Acuity stipulated to damages, rather than taking the case to trial where that issue would have been decided by a jury. The Stones had received $500,000 from the tortfeasor's insurer. The amount the parties agreed was yet to be paid if the $1,000,000 umbrella provided UIM coverage was

$500,000. The stipulation relieved the Stones from their burden of proving the extent of their damages in a case where damages were not seriously contested by Acuity, and it moved the legal issue on which the circuit court's decision rested, i.e., that the policy was contextually ambiguous, forward to an appeal.

## II. DISCUSSION

¶ 84. The question that is presented is whether the Stones and Acuity intended to agree that if an appellate court applied the court of appeals decision in *Rebernick v. Wausau General Insurance Company*, 2005 WI App 15, 278 Wis. 2d 461, 692 N.W.2d 348, to the umbrella policy and concluded that Acuity had not provided the notice required by Wis. Stat. § 632.32(4m)(a)1, Acuity would pay the Stones $500,000.

A. Standard of Review

¶ 85. "The construction of a stipulation is a question of law" subject to our independent review. *Duhame v. Duhame,* 154 Wis. 2d 258, 262, 453 N.W.2d 149 (Ct. App. 1989). We also determine whether a stipulation is ambiguous as a question of law. *See Flejter v. Estate of Flejter,* 2001 WI App 26, ¶¶ 28–30, 240 Wis. 2d 401, 623 N.W.2d 552.

B. Stipulations

1. General principles

¶ 86. A stipulation is ambiguous if it is "reasonably or fairly susceptible to more than one construction." *Id.,* ¶ 28. Stipulations are to be construed consis-

tent with the intention of the parties at the time they entered into the stipulation and in "the spirit of justice, . . . and should not be construed technically so as to defeat the purposes for which they were made." *Pierce v. Physicians Ins. Co. of Wis., Inc.*, 2005 WI 14, ¶ 31, 278 Wis. 2d 82, 692 N.W.2d 558 (citation omitted).

¶ 87. When the parties' intent about all potential applications of a stipulation is not apparent from the face of the stipulation, one must look to the context in which the stipulation was made. The context includes the procedural posture of the case, as well as the parties' purpose in entering into the stipulation. *Id.*, ¶ 32. An examination and understanding of the context in which the stipulation was made is extremely important because a stipulation must, above all, "give effect to the intention of the parties." *D'Angelo v. Cornell Paperboard Prods. Co.*, 33 Wis. 2d 218, 227, 147 N.W.2d 321 (1967). When a stipulation is entered into merely as a procedural facilitation, the stipulation should be narrowly construed. *Id.*

¶ 88. Although we have indicated that stipulations may have the attributes of a contract, "they are not governed by contract law and may be set aside, in the court's discretion, for any of the reasons specified in Rule 806.07(1), Stats." *Kocinski v. Home Ins. Co.*, 154 Wis. 2d 56, 73, 452 N.W.2d 360 (1990) (citation omitted).

2. Stones and Acuity's stipulation

¶ 89. Acuity appealed from the circuit court's decision that UIM coverage was afforded under the umbrella policy because it was contextually ambiguous. The stipulation of the parties did not waive any rights of appeal that Acuity had "with respect to the decisions on Acuity's Motion for Summary Judgment and Motion

to Reconsider." *Stipulation and Final Order* 2 (Milwaukee County Cir. Ct. Jun. 8, 2005). There is nothing in the stipulation that mentions *Rebernick* or addresses whether Acuity did or did not comply with the notice requirements of Wis. Stat. § 632.32(4m)(a)1, in regard to the umbrella policy. There is nothing in the stipulation that addresses what penalty, if any, should be imposed if it is determined that Acuity should have, but did not, give a sufficient § 632.32(4m)(a)1 notice.

¶ 90. The Stones assert that the court of appeals decided *Rebernick* before the circuit court's decision on Acuity's motion for reconsideration and *Rebernick* was brought to the attention of the circuit court. Therefore, the Stones continue, the language in the stipulation requiring Acuity to pay $500,000 in the event "insurance coverage is found on appeal to exist from Acuity" applies to a determination by an appellate court that Acuity did not comply with *Rebernick*'s interpretation of Wis. Stat. § 632.32(4m)(a)1. The majority opinion agrees.[1]

¶ 91. Acuity contends that the stipulation has no such meaning, and if it is concluded that it failed to fulfill its obligations under Wis. Stat. § 632.32(4m)(a)1, a remand to the circuit court is necessary to determine whether the Stones would have purchased more UIM coverage if proper notice had been given. Because of the general language in which the stipulation is phrased, reasonable people could disagree about the meaning of the document. Therefore, I conclude that it is ambiguous. Accordingly, consideration of extrinsic evidence to interpret the intent of the parties is appropriate. *See Farm Credit Servs. of N. Cent. Wis. v. Wysocki*, 2001 WI 51, ¶ 12, 243 Wis. 2d 305, 627 N.W.2d 444; *Duhame*, 154 Wis. 2d at 264–67.

---

[1] Majority op., ¶ 37.

¶ 92. When interpreting an ambiguous stipulation, the context in which the stipulation arises is important in determining the intent of the parties. *D'Angelo,* 33 Wis. 2d at 227. The procedural posture of the case at the time that the stipulation was made is part of that context. *Pierce,* 278 Wis. 2d 82, ¶ 32. Here, the parties stipulated solely to eliminate the need to conduct a jury trial to determine the Stones' damages and to facilitate the appeal of the circuit court's decision. Therefore, the stipulation was a procedural device formulated to facilitate the parties' appeal, and it should be narrowly construed. *D'Angelo,* 33 Wis. 2d at 227.

¶ 93. I also note that the Stones did not plead a lack of notice pursuant to Wis. Stat. § 632.32(4m)(a)1 as a basis for requiring UIM payments under the umbrella policy. While it is true, as the majority opinion points out, that the court of appeals' decision in *Rebernick* was brought to the circuit court's attention,[2] the circuit court never addressed whether Acuity did or did not comply with § 632.32(4m)(a)1. See Milwaukee County Circuit Court Order of July 6, 2004.

¶ 94. In addition, when the parties entered into the stipulation, there was nothing in the court of appeals *Rebernick* decision that would have alerted Acuity to what penalty it might face for noncompliance with Wis. Stat. § 632.32(4m)(a)1. This is so because although *Rebernick* decided that notice of UIM coverage is required for umbrella policies, it concluded that Wausau General Insurance Company had complied with the notice provisions of the statute. *Rebernick,* 278 Wis. 2d 461, ¶¶ 9–11. Accordingly, no penalty was addressed by the majority opinion in *Rebernick.* Even

---

[2] Majority op., ¶ 71.

the separate opinion of Judge Kessler in *Rebernick* did not foretell the penalty the majority opinion assesses against Acuity. Rather, Judge Kessler would have required the insurance company to give notice and then would have permitted the Rebernicks to decide whether to purchase UIM coverage under the umbrella policy as an addition to their automobile liability policy. *Id.*, ¶ 14 (Kessler, J., concurring in part; dissenting in part). Because no court had decided on an appropriate remedy for an insurer's failure to comply with § 632.32(4m)(a)1 in regard to an umbrella policy when the stipulation was made, it is unreasonable to conclude that the parties intended to agree that Acuity would pay a $500,000 penalty, if it was determined at a later date that Acuity had not complied with § 632.32(4m)(a)1.

¶ 95. Furthermore, the majority opinion imposes an excessive penalty as a remedy for a failure to give sufficient notice pursuant to Wis. Stat. § 632.32(4m)(a)1. Acuity must pay $500,000. However, to all other insurers, the amount of the penalty is the minimum amount of UIM insurance that § 632.32(4m)(d) requires when UIM is sold, i.e., $50,000 per person and $100,000 per accident.[3] The majority opinion relies on Wis. Stat. § 631.15(3m) for deciding upon the amount of UIM coverage to assess as a penalty because § 631.15(3m) directs that a "policy that violates a statute or rule is enforceable against the insurer as if it conformed to the statute or rule."[4]

¶ 96. Moreover, the circuit court concluded that coverage was afforded for an occurrence because the policy was contextually ambiguous. Concluding that coverage exists due to the language of the policy is a

---

[3] Majority op., ¶ 76.

[4] Majority op., ¶ 38.

different conclusion than is assigning a penalty for failing to comply with a statutory directive. The coverage question to which the stipulation is directed is based on the circuit court's construction of the words used in Acuity's policy. Therefore, it was the policy itself, not a statutory penalty, that created the potential of an additional payment under the stipulation.

¶ 97. Accordingly, I conclude that the parties did not intend to agree that the stipulation would encompass a remedy for noncompliance with Wis. Stat. § 632.32(4m)(a)1. My reasons for this conclusion are five-fold: (1) The stipulation was a procedural device intended to move the case forward toward appellate review of the circuit court's decision by foregoing a trial on damages, when damages were not seriously contested; (2) the Stones did not plead noncompliance with § 632.32(4m)(a)1 as a basis for payment by Acuity; (3) the circuit court did not address whether Acuity was in compliance with the court of appeals decision in *Rebernick;* (4) *Rebernick* did not address the question of remedy for noncompliance; and (5) the remedy for noncompliance the majority opinion assigns could not have been anticipated by the parties when they entered into the stipulation because that remedy was first determined in the case now before us. To construe the stipulation otherwise, as the majority opinion does, ignores the purpose for which the stipulation was made, a construction that is contrary to the recent precedent of this court. *See Pierce,* 278 Wis. 2d 82, ¶¶ 31–32.

3. Fairness

¶ 98. Because my construction of the stipulation is a minority opinion, it cannot provide the relief Acuity seeks. However, the majority opinion treats Acuity more harshly than it treats any other insurer that has

598

failed to comply with Wis. Stat. § 632.32(4m)(a)1 because of the way in which the majority opinion interprets the stipulation. In my view, fairness requires that Acuity be treated no better and no worse than any other insurer that has failed to comply with § 632.32(4m)(a)1.

¶ 99. Wisconsin Stat. § 806.07 provides an avenue for a circuit court to grant relief from a stipulation, as the majority opinion interprets it, and thereby treat Acuity as any other insurer that has failed to comply with Wis. Stat. § 632.32(4m)(a)1. Section 806.07(1) provides:

> On motion and upon such terms as are just, the court, subject to subs. (2) and (3), may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:
>
> (a) Mistake, inadvertence, surprise, or excusable neglect;
>
> (b) Newly-discovered evidence which entitles a party to a new trial under s 805.15(3);
>
> (c) Fraud, misrepresentation, or other misconduct of an adverse party;
>
> (d) The judgment is void;
>
> (e) The judgment has been satisfied, released or discharged;
>
> (f) A prior judgment upon which the judgment is based has been reversed or otherwise vacated;
>
> (g) It is no longer equitable that the judgment should have prospective application; or
>
> (h) Any other reasons justifying relief from the operation of the judgment.

In my view, fairness requires consideration of Wis. Stat. § 806.07(1).

### III. CONCLUSION

¶ 100. I respectfully dissent from the majority opinion's discussion and conclusions relative to the stipulation for three reasons: (1) the stipulation is ambiguous as to the parties' intent; (2) the majority opinion unreasonably interprets the parties' stipulation to effect an unwarranted penalty against Acuity; and (3) in the alternative, even were I to agree with the majority opinion's interpretation of the stipulation, fairness requires that the penalty to which Acuity should be subjected for failing to comply with Wis. Stat. § 632.32(4m)(a)1 be referred to the circuit court so that Acuity can bring a motion pursuant to Wis. Stat. § 806.07(1), to request relief from the stipulation, in order that Acuity be treated the same as would any other insurer who did not give the notice required by § 632.32(4m)(a)1.

¶ 101. LOUIS B. BUTLER, JR., J. (*concurring in part, dissenting in part*). I concur with the majority's conclusions that Acuity violated the notice provisions of Wis. Stat. § 632.32(4m) when it failed to provide notice of the availability of UIM coverage, and that the Stones' recovery for that violation is potentially set by the stipulation they entered into with Acuity. *See* majority op., ¶¶ 2–3, 77–78. Consequently, I join that part of the opinion.

¶ 102. However, I dissent from that part of the majority opinion establishing the remedy for other cases in which Wis. Stat. § 632.32(4m) is violated but where, unlike this case, a stipulation does not set the remedy for the parties. In its analysis, the majority goes

600

beyond the facts and issues of the present case. Not only does the majority address questions which need not be resolved in this case, but I also disagree with the answer the majority chose: the creation of a new rule that when an insurer fails to provide notice of the availability of UIM coverage in an umbrella insurance coverage policy, the remedy is to reform the policy to automatically read into the policy primary coverage amounts of $50,000 per person and $100,000 per accident. *See id.,* ¶ 64.

¶ 103. The majority fails to recognize that an insurance policy "that violates a statute or rule is enforceable against the insurer as if it conformed to the statute or rule." *Rebernick v. Wausau Gen. Ins. Co.,* 2006 WI 27, ¶ 57, 289 Wis. 2d 324, 711 N.W.2d 621 (quoting Wis. Stat. § 631.15(3m)). Thus, in my view, a determination of the appropriate reformation remedy for Wis. Stat. § 632.32(4m) violations generally requires a prerequisite factual determination of whether an insured would have purchased a UIM policy in the first place, and at what amount. Moreover, capping available umbrella coverage at the levels established in Wis. Stat. § 632.32(4m)(d) conflicts with the meaning and purpose of "umbrella" insurance policies, which set the minimum coverage at $1,000,000. Wis. Admin. Code § INS 6.77(3)(c)(June 2007).

I

¶ 104. Wisconsin Stat. § 632.32(4m) clearly provides that:

> An insurer writing policies that insure with respect to a motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by a person

arising out of the ownership, maintenance or use of a motor vehicle *shall provide* to one insured . . . *written notice of the availability of underinsured motorist coverage,* including a brief description of the coverage. . . .

Wis. Stat. § 632.32(4m)(a)1. (emphasis added). In *Rebernick,* 289 Wis. 2d 324, ¶¶ 22–23, we explained that notice of the availability of UIM coverage must be provided under umbrella policies in addition to the notice provided with underlying primary policies. In *Rebernick,* this court did not determine the appropriate remedy for violations of § 632.32(4m) because the majority concluded that the insurer had given the statutorily required notice. *Id.,* ¶¶ 34–37.

¶ 105. In the present case, because the required notice was clearly not given, the issue of determining the appropriate remedy is back on the table. However, the remedy in this case may have been already predetermined by the parties' stipulation. The majority acknowledges that the stipulation between the parties in this case reflects a clear and explicit agreement by Acuity to pay the Stones $500,000 in the event that insurance coverage from Acuity was found on appeal to exist. Majority op., ¶¶ 3, 66.

¶ 106. Our conclusion that Acuity failed to give statutorily required notice is only the first step in determining whether insurance coverage exists in this case. Under Wis. Stat. § 631.15(3m), an insurance policy "that violates a statute or rule is enforceable against the insurer as if it conformed to the statute or rule." Thus, § 631.15(3m) provides, in effect, for reformation of an insurance policy that violates a statute. Yet, we do not know if the Stones would have purchased an umbrella policy had they known of its availability, and at what amount. Lack of such notice will not always translate into payment of insurance proceeds. In short,

the remedy question in this case involves factual issues that cannot be resolved based on the current record.

¶ 107. If, on remand, the circuit court concludes that the Stones would have purchased an umbrella policy if they had been provided with the requisite notice, the terms of the unambiguous stipulation would then be met in this case, triggering Acuity's responsibility to compensate the Stones in the amount of $500,000 and resolving the issue of the appropriate remedy.

II

¶ 108. Even if this case did not involve such a stipulation and it were necessary to determine a different remedy for an insurer's failure to provide notice of the availability of UIM coverage under an umbrella policy, I strongly disagree with the majority's proposed solution of reading into an umbrella policy a level of coverage in the amount of $50,000 per person and $100,000 per accident, which is well below the minimum coverage provided for an umbrella policy.

¶ 109. In addition to deciding an issue not squarely before it, this judicially constructed remedy is flawed for two other reasons: it fails to take into account the necessity of remanding such cases for required factual determinations, and the amount established for violating notice provisions for UIM in umbrella insurance policies contravenes the purpose and nature of umbrella insurance policies.

A

¶ 110. Acuity's failure to comply with the requirements of Wis. Stat. § 632.32(4m) involves the interpretation and application of a statute to undisputed facts,

which is a question of law subject to independent review. *Phelps v. Physicians Ins. Co.,* 2005 WI 85, ¶ 25, 282 Wis. 2d 69, 698 N.W.2d 643. Wisconsin Stat. § 631.15(3m), which provides that an insurance policy "that violates a statute or rule is enforceable against the insurer as if it conformed to the statute or rule," authorizes reformation of insurance policies which are not in compliance with statutory requirements. *See also Brunson v. Ward,* 2001 WI 89, ¶ 16, 245 Wis. 2d 163, 629 N.W.2d 140.

¶ 111. However, determination of the appropriate reformation is not a straightforward determination which may be made absent further factual inquiries. A recitation of Wis. Stat. § 632.15(3m) does not answer the question of whether, had Acuity provided the required notice, the Stones would have purchased UIM coverage in their umbrella policy and at what amount.

¶ 112. In this case, the majority concedes that whether the Stones would have purchased UIM coverage remains a genuine issue of fact. Majority op., ¶ 40. Findings of whether a particular policy would have been purchased, and at what amount, are questions of fact reserved for the circuit court. Should the circuit court find, on remand, that coverage exists, then the terms of the stipulation clearly govern.

¶ 113. Even if there were no such stipulation in this case, we would exceed the scope of our authority were we to determine the amount of coverage the Stones' UIM policy should provide before first remanding the case for the factual determination of whether the Stones would have purchased such a policy in the first place, as well as how much insurance they would have purchased. Any remedy beyond that clearly provided by the unambiguous stipulation between the parties is a determination involving factual issues that

is within the province of the circuit court, not this court. I therefore consider the majority's consideration of this issue to be unnecessary and beyond the scope of this court's authority.

B

¶ 114. Finally, even if it were appropriate for us to determine the appropriate default amount of coverage for future cases involving Wis. Stat. § 632.32(4m) violations, I would nevertheless reject the default remedy proposed by the majority opinion for failure to offer UIM coverage with an umbrella policy. Setting the remedy for failure to offer UIM coverage for an umbrella policy at a primary insurance policy default coverage level of $50,000 per person and $100,000 per accident does not make sense in light of the underlying nature, purpose, and policy minimums of umbrella policies.

¶ 115. Unlike primary insurance policies, umbrella policies are meant to cover large expenses which may vastly exceed those covered by primary insurance. The coverage provided by umbrella policies " 'gives a financial security, as well as peace of mind, to the individual purchasing such coverage who is hopeful that he will never be involved in any substantial claim or lawsuit, but, if he is, is desirous of not losing the security it may have taken a lifetime to acquire.' " *Oelhafen v. Tower Ins. Co.,* 171 Wis. 2d 532, 538–39, 492 N.W.2d 321 (Ct. App. 1992)(quoting 8A J.A. Appleman & J. Appleman, *Insurance Law & Practice,* § 4909.85 at 452–53 (rev. ed. 1981)).

¶ 116. Setting the levels established in Wis. Stat. § 632.32(4m)(d) as the appropriate level of coverage for violations which fail to give notice of the availability of

umbrella policies is in direct contravention of the clear intent of the Wisconsin Insurance Commissioner to set the minimum coverage for umbrella policies at $1,000,000. Wisconsin Admin. Code § INS 6.77(3)(c) defines an umbrella liability policy as "an insurance contract providing at least $1,000,000 of liability coverage per person or per occurrence in excess of certain required underlying liability insurance coverage or a specified amount of self-insured retention."

¶ 117. It is well established that although this court may not

> ex post facto compel the performance of conditions in a contract which the parties did not contemplate or bargain for, coverages omitted from an insurance contract may nevertheless be compelled and enforced as though a part thereof where the inclusion of such coverage is required by a properly enacted statute. In such case a policy of insurance omitting a required coverage will be enforced as though it had been written in accordance with the legislative prescription.

*Amidzich v. Charter Oak Fire Ins. Co.,* 44 Wis. 2d 45, 53, 170 N.W.2d 813 (1969)(citing 44 C.J.S. *Insurance,* § 302 at 1215–16; *Zippel v. Country Gardens, Inc.,* 262 Wis. 2d 567, 55 N.W.2d 903 (1952); *Sandstrom v. Estate of Clausen,* 258 Wis. 534, 46 N.W.2d 831 (1951)). In this case, the applicable legislative prescription includes both the Wis. Stat. § 632.32(4m) requirement that coverage be offered and the clear language of Wis. Admin. Code § INS 6.77(3)(c) setting the minimum amount of umbrella coverage at $1,000,000. Consequently, the omission of required umbrella coverage should be enforced as though the coverage in the amount of at least $1,000,000 had been offered. In the absence of any legal authority requiring or explicitly authorizing this court to lower the umbrella policy

coverage levels in favor of a new judicially created statutory violation remedy, the majority goes too far and fails to accommodate the difference between umbrella insurance policies and primary insurance policies.

¶ 118. In *Rebernick,* this court stated that the central purpose of Wis. Stat. § 632.32(4m) is to ensure that insureds are informed both of the availability of UIM coverage, as well as the nature and amount of coverage. *See Rebernick,* 289 Wis. 2d 324, ¶ 30. The contradictory result of the majority opinion would be to require that insureds be told that they could receive $1,000,000 UIM umbrella coverage, but then be given only a fraction of that upon a statutory or rule violation.

¶ 119. As such, if a policy were reformed to provide the kind of coverage that would have been available had the Stones opted for UIM umbrella coverage, that amount would more appropriately be set at $1,000,000 (or more, if upon remand the Stones could establish they would have purchased more coverage), not the lower statutory minimum set by § 632.32(4m)(d) for primary policies.

III

¶ 120. In conclusion, the stipulation between the parties in this case makes the majority's analysis of other potential remedies for Wis. Stat. § 632.32(4m)(d) violations unnecessary. What is necessary is a remand to determine whether the stipulation should take effect. Even if this case were not resolved through the application of the stipulation, however, I still disagree with the majority's new rule adopting the statutory minimum coverage for primary insurance policies as the required statutory minimum for umbrella insurance

policies as well, where there is a violation of § 632.32(4m)(d), particularly where the finder of fact has not determined whether and at what amount umbrella UIM coverage would have even been purchased, and in light of the minimum umbrella insurance amount of $1,000,000. I therefore respectfully concur in part and dissent in part.