Henry J. NAULT, Jr., individually and Lisa G. Nault, individually, and as Special Administrator of the Estate of Jaron J. Nault, deceased, Plaintiffs-Appellants,

JOHN ALDEN LIFE INSURANCE COMPANY, Assurant Health, Parent Company, Nominal-Plaintiff,

v.

WEST BEND MUTUAL INSURANCE COMPANY,†† Defendant-Respondent,

William H. SIMONSON, Dairyland Insurance Company and Foremost Insurance Company, Defendants.

Court of Appeals

*No. 2007AP1670. Submitted on briefs April 29, 2008. —Decided May 20, 2008.*

2008 WI App 91

(Also reported in 754 N.W.2d 520.)

†† Petition to review dismissed.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Scott Winston* and *Thomas Kent Guelzow* of *Guelzow Law Offices, Ltd.*, Eau Claire.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Joe Thrasher* of *Thrasher, Pelish & Franti, Ltd.*, Rice Lake.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. PETERSON, J. Henry and Lisa Nault[1] appeal a summary judgment holding their West Bend Mutual Insurance Company umbrella policy does not provide excess underinsured motorist (UIM) coverage. They argue the policy is contextually ambiguous. They also contend the court should have held there was coverage because West Bend failed to give proper notice of the availability of excess UIM coverage in violation of Wis. Stat. § 632.32(4m).[2]

¶ 2. We agree with the circuit court's determination that the West Bend umbrella policy is not contextually ambiguous. However, we conclude Wis. Stat. § 632.32(4m) required West Bend to offer excess UIM and give the Naults notice that excess UIM coverage was available as part of its umbrella policy. Because West Bend did not give this required notice, the Naults are entitled to the minimum coverage specified in

[1] Lisa Nault appeals individually and in her capacity as special administrator of her son Jaron Nault's estate. For clarity, we refer to the Naults by their first names when discussing them individually. We refer to Henry and Lisa, the plaintiffs in this case, as the Naults when discussing their arguments.

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

§ 632.32(4m)(d). We therefore reverse in part and remand for a declaratory judgment awarding the Naults that coverage.

## BACKGROUND

¶ 3. Henry and Lisa Nault are the parents of Jaron Nault. Jaron died July 6, 2005, of injuries sustained in a two-vehicle accident. The accident occurred when the driver of the other vehicle, William Simonson, crossed the center line. The parties have stipulated that Simonson's negligence was the sole cause of the accident. Simonson had a Dairyland Insurance Company liability policy with a $25,000 limit.

¶ 4. Jaron was driving a motorcycle Henry owned. Henry insured the motorcycle under a Foremost Insurance Company policy that included $100,000 of UIM coverage. In addition, Henry and Lisa had automobile, homeowners, and umbrella insurance issued by West Bend. The umbrella policy had a $1 million limit.

¶ 5. The Naults filed suit against Simonson, Dairyland, Foremost, and West Bend. Dairyland and Foremost both paid their policy limits and were dismissed from the action. The parties stipulated that after the payments by Dairyland and Foremost, the Naults had outstanding uncompensated damages of $253,793.40.

¶ 6. The remaining parties filed cross-motions for summary judgment on West Bend's liability for the outstanding damages. As relevant here, the Naults argued the umbrella policy was contextually ambiguous. They also argued they were not provided with notice of UIM coverage as required by WIS. STAT. § 632.32(4m).

¶ 7. West Bend argued the policy unambiguously excluded coverage, and no WIS. STAT. § 632.32(4m) no-

682

tice was required because West Bend did not offer excess UIM coverage as part of its umbrella policies. West Bend included an affidavit from a senior underwriter stating it discontinued offering excess UIM coverage as part of new umbrella policies issued after January 1, 2004—over a year before the Naults purchased their umbrella policy. The underwriter stated West Bend continued to provide umbrella policies including excess UIM coverage to insureds who had purchased those policies before 2004. The circuit court granted West Bend summary judgment. We certified the case to the supreme court, and the court declined to accept the case.

## DISCUSSION

¶ 8. Whether summary judgment is appropriate is a question of law reviewed without deference to the circuit court, using the same methodology. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2); *Green Spring Farms*, 136 Wis. 2d at 315.

## I. Contextual ambiguity

¶ 9. The parties first disagree over whether the West Bend umbrella policy is contextually ambiguous.[3] A contextual ambiguity exists when organization, label-

---

[3] We must address both of the Naults' arguments because a contextual ambiguity might allow them full coverage, while lack of notice under WIS. STAT. § 632.32(4m) would allow them only

ing, explanation, inconsistency, omission, or text of other provisions in the policy render an otherwise clear provision ambiguous. *Folkman v. Quamme*, 2003 WI 116, ¶¶ 19–20, 264 Wis. 2d 617, 665 N.W.2d 857. An ambiguous provision is one that allows a reasonable insured to find an alternative meaning. *Id.*, ¶ 32. When such an ambiguity exists, it will be construed against the drafter. *Id.*, ¶¶ 13, 16. Whether a contextual ambiguity exists—like other questions requiring construction of an insurance contract—is a question of law reviewed without deference. *Id.*, ¶¶ 12–13.

¶ 10. The Naults' argument focuses on the following exclusion:

**17. Uninsured/Underinsured Motorists or No-Fault.**

[West Bend] will not cover any claims which may be made under:

. . . .

**b.** Any Uninsured Motorists or Underinsured Motorists coverage unless this coverage form is endorsed to provide such coverage. (Emphasis in original.)

"Coverage form" is not defined in the West Bend policy. The Naults contend that to determine what "this coverage form" means, a reasonable insured would consult the definition of "underlying insurance." The umbrella policy defines "underlying insurance" as "any policy or coverage form providing the 'insured' with initial or primary liability insurance." As we understand their

the minimum coverage specified in § 632.32(4m)(d). *See Stone v. Acuity*, 2008 WI 30, ¶ 61, 308 Wis. 2d 558, 747 N.W.2d 149; *Folkman v. Quamme*, 2003 WI 116, ¶¶ 13,16, 264 Wis. 2d 617, 665 N.W.2d 857.

argument, the Naults argue a reasonable insured could conclude from this definition that the West Bend primary automobile insurance, which included UIM, was a qualifying endorsement of the umbrella policy.

¶ 11. We disagree. First, we see no ambiguity in the phrase "this coverage form." The cover page of the umbrella policy has the heading "HOME AND HIGH-WAY® PERSONAL LIABILITY UMBRELLA COVERAGE FORM" in large, bold-face font. Below the heading is an introductory paragraph stating:

> This is a **legal contract** between the insured and the company. The index below provides a brief outline of some of the important features of **your** coverage. This is not the insurance contract and only the actual coverage provisions will apply. The coverage form itself sets forth in detail the rights and obligations of both **you** and **your** insurance company. IT IS THEREFORE IMPORTANT THAT YOU READ YOUR COVERAGE FORM CAREFULLY. (Emphasis in original.)

The cover page then lists page numbers for the insuring agreement, definitions, coverages, additional coverages, and exclusions. The cover page is followed by ten numbered pages. The top of the first page also has the same large font, bold face heading as the cover page. Headings on the remaining pages correspond to the index on the cover page. The UIM exclusion is found on page six, consistent with the statement in the index that exclusions begin on page five.

¶ 12. We see nothing ambiguous in this organization, labeling, or index. Having read the heading, introductory paragraph, and index, a reasonable insured could only conclude that "this coverage form" means the eleven-page umbrella coverage form. This is especially true because the listed exclusions, including the UIM

exclusion, are listed in the index as part of the "personal liability umbrella policy coverage form." We see no reason an insured would attempt to determine the meaning of "this coverage form" by consulting the definition of "underlying insurance"—a definition found three pages into the policy among twenty other definitions.

¶ 13. Second, nothing in the definition of "underlying coverage" suggests "this coverage form" includes the Naults' automobile insurance coverage form. A reasonable insured would infer from the phrase "any policy or coverage form" that underlying insurance in fact involves *different* coverage forms. The insured would confirm this interpretation by consulting the automobile coverage form, which is identified with the different heading "HOME AND HIGHWAY® PERSONAL AUTO COVERAGE FORM." Nothing in the definition of "underlying insurance" suggests "this coverage form" includes coverage forms for the Naults' primary insurance.

¶ 14. The Naults also argue the phrase "unless this coverage form is endorsed to provide such coverage" is ambiguous because no such endorsement was available, at least to them. However, the unavailability of an endorsement would not lead a reasonable insured to believe there was coverage. The exclusion unambiguously states there is no UIM coverage absent an endorsement. A reasonable insured would conclude that if no endorsement was available there was no coverage, not the opposite. In addition, contextual ambiguity exists when a particular policy provision is ambiguous in the context of other parts of the policy, not in the context of facts that may or may not have been known to an insured. *See Folkman*, 264 Wis. 2d 617, ¶¶ 19–20.

686

The Naults do not cite to any authority suggesting contextual ambiguity takes into account facts outside the policy.

## II. Notice of UIM coverage

¶ 15. The parties next dispute whether coverage is created by operation of WIS. STAT. § 632.32(4m). The meaning of a statute is a question of law reviewed without deference. *LaCount v. General Cas. Co.*, 2006 WI 14, ¶ 20, 288 Wis. 2d 358, 709 N.W.2d 418. We begin with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 5, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, in relation to the language of surrounding or closely related statutes, and in a way that avoids absurd results. *Id.*, ¶ 46. We also consider the purpose of the statute so far as its purpose is shown in the text and structure of the statute itself. *Id.*, ¶ 48.

¶ 16. As relevant here, WIS. STAT. § 632.32(4m) provides:

> (a) 1. An insurer writing policies that insure with respect to a motor vehicle . . . against loss resulting from liability imposed by law for bodily injury or death . . . shall provide to one insured under each such insurance policy that . . . is written by the insurer and that does not include underinsured motorist coverage written notice of the availability of underinsured motorist coverage, including a brief description of the coverage.
>
> . . . .
>
> (c) If a person rejects underinsured motorist coverage . . . the insurer is not required to provide such

687

coverage under a policy that is renewed to the person by that insurer unless an insured under the policy subsequently requests such underinsured motorist coverage in writing.

(d) If an insured who is notified under par. (a) 1. accepts underinsured motorist coverage, the insurer shall include the coverage under the policy just delivered to the insured in limits of at least $50,000 per person and $100,000 per accident.

¶ 17. This statute applies to umbrella policies that are excess over automobile liability insurance. Like primary automobile liability insurance, these umbrella policies "insure with respect to a motor vehicle . . . against loss resulting from liability imposed by law for bodily injury or death . . . ." WIS. STAT. § 632.32(4m)(a)1; *Rebernick v. Wausau Gen. Ins. Co.*, 2006 WI 27, ¶¶ 17, 23, 289 Wis. 2d 324, 711 N.W.2d 621.

¶ 18. West Bend does not challenge the Naults' assertion that its umbrella policy "insure[s] with respect to a motor vehicle . . . against loss resulting from liability imposed by law for bodily injury or death . . . ." *See* WIS. STAT. § 632.32(4m)(a)1. Therefore, the statute applies to the policy.

¶ 19. West Bend also does not challenge the Naults' assertion that it did not give any notice that UIM was available as part of its umbrella policy.[4] Instead, West Bend argues no notice was required

---

[4] West Bend argues the umbrella policy, homeowner's policy, and automobile policy it issued to the Naults are in fact a single policy, and it complied with WIS. STAT. § 632.32(4m) because the automobile policy included UIM. This argument was rejected in *Stone*, where the supreme court held an umbrella policy is a separate policy for purposes of WIS. STAT. § 632.32(4m). *Stone*, 308 Wis. 2d 558, ¶¶ 27–33.

because it did not offer excess UIM as part of umbrella policies issued after January 1, 2004.

■■■

¶ 20. We disagree. We conclude the statute requires West Bend to offer UIM coverage as part of its umbrella policy and to give notice of the availability of the coverage.

¶ 21. WISCONSIN STAT. § 632.32(4m) sets out a specific procedure to be followed by insurers. If an insurer writes a qualifying automobile liability policy, the insurer must give the insured a notice that UIM coverage is also available. At that point, the insured may either accept or reject UIM coverage. If the insured accepts coverage, the insurer "shall include" UIM coverage in the policy with limits of at least $50,000 per person and $100,000 per accident. WIS. STAT. § 632.32(4m)(d). If the insured rejects UIM coverage, the insurer need not include it in the policy. WIS. STAT. § 632.32(4m)(c).

¶ 22. Here, West Bend's umbrella policy includes excess automobile liability insurance, and therefore triggers WIS. STAT. § 632.32(4m). As a result, West Bend was required to give the Naults "written notice of the availability of underinsured motorist coverage, including a brief description of the coverage[]" at the time it issued the policy. *See* WIS. STAT. § 632.32(4m)(a)1. The Naults had the option of responding to the written notice by accepting coverage. *See* WIS. STAT. § 632.32(4m)(d). If they did so, West Bend was required to "include [UIM] coverage under the . . . policy . . . in limits of at least $50,000 per person and $100,000 per accident." *See id.*

¶ 23. West Bend does not attempt to reconcile its position with this statutory language; instead, it simply asserts that "it makes no sense to even discuss giving

notice of availability of something that did not exist." However, we see no way to read the statute except as requiring West Bend to offer excess UIM coverage and to provide notice that the coverage is available. West Bend's decision to not offer excess UIM coverage was contrary to the statute, and cannot excuse its failure to give the required notice.

¶ 24. This result is consistent with the two purposes of Wis. Stat. § 632.32(4m) identified by the supreme court. First, like other insurance statutes, § 632.32(4m) is intended to assure insurance coverage to accident victims, and therefore is broadly construed in favor of coverage. *Stone v. Acuity*, 2008 WI 30, ¶ 32, 308 Wis. 2d 558, 747 N.W.2d 149 (citations omitted). Second, § 632.32(4m) is intended to "ensure that all insureds know of the availability of UIM coverage." *Stone*, 308 Wis. 2d 558, ¶ 32 (citing *Rebernick*, 289 Wis. 2d 324, ¶ 25). Our construction of § 632.32(4m) interprets it in favor of coverage rather than no coverage. Our construction also requires insurers to advise insureds that excess UIM coverage is available as part of umbrella policies. *See Rebernick*, 289 Wis. 2d 324, ¶ 25.

¶ 25. West Bend argues requiring coverage here is contrary to *Rebernick*.[5] West Bend seizes on the *Rebernick* court's statement, echoed in *Stone*, that the legislature intended that "where UIM coverage is available, insureds should know about it."[6] *Rebernick*, 289 Wis. 2d

---

[5] *Stone* was decided after briefing in this case. *See Stone*, 308 Wis. 2d 558, ¶ 1 (decided April 11, 2008).

[6] West Bend also relies on the Insurance Commissioner's regulation exempting umbrella policies from Wis. Stat. § 632.32(4m) effective July 1, 2007. *See* Wis. Admin. Code § Ins 6.77(4)(a) (March 2008). West Bend argues the regulation con-

324, ¶ 25; *see also Stone*, 308 Wis. 2d 558, ¶ 23. In both *Rebernick* and *Stone*, the insurers permitted their insureds to include excess UIM coverage in their umbrella policies. *See Stone*, 308 Wis. 2d 558, ¶ 8; *Rebernick*, 289 Wis. 2d 324, ¶ 29. West Bend argues *Rebernick* holds notice is required only "where UIM coverage is available . . . ." *See Rebernick*, 289 Wis. 2d 324, ¶ 25.

¶ 26. We disagree. First, as explained above, West Bend was required to offer a specified minimum level of excess UIM under WIS. STAT. § 632.32(4m)(d). West Bend therefore did not have the option of not making excess UIM coverage available. Second, the court in *Rebernick* expressly did not address whether § 632.32(4m) required insurers to write policies that included UIM. *Rebernick*, 289 Wis. 2d 324, ¶ 11 n.5. In the same paragraph as the quote West Bend cites, the court also described the purpose of the statute as ensuring "that all insureds know of the availability of UIM coverage." *Id.*, ¶ 25. In that context, the sentence West Bend cites is best understood as applying § 632.32(4m) to the facts present in *Rebernick*, not as suggesting an answer to a question the court had expressly declined to consider.

¶ 27. West Bend also argues the Naults' interpretation of the statute mandates UIM coverage, and UIM—unlike uninsured motorist—is not mandatory.

firms its interpretation of WIS. STAT. § 632.32(4m). First, as West Bend acknowledges, the regulation became effective well after the policy was issued. Second, the regulation appears to be contrary to *Rebernick* and *Stone*, both of which apply WIS. STAT. § 632.32(4m) to umbrella policies. *See Rebernick v. Wausau Gen. Ins. Co.*, 2006 WI 27, 289 Wis. 2d 324, 711 N.W.2d 621. If anything, the regulation seems an attempt to change existing law, not clarify it. Like the court in *Stone*, we "do not address here the authority to enact such a rule." *Stone*, 308 Wis. 2d 558, ¶ 24 n.6.

*See id.*, ¶ 11. However, requiring an insurer to offer UIM coverage is not the same as requiring the insurer to include UIM coverage in every policy. Like insureds who purchase primary liability insurance, an insured who purchases excess liability insurance as part of an umbrella policy is free to decline the coverage offered.

¶ 28. *Stone* holds that if an insurer issues a qualifying umbrella policy but does not give the notice required under Wis. Stat. § 632.32(4m), the remedy is to read in the minimum amount of coverage specified in § 632.32(4m)(d). *Stone*, 308 Wis. 2d 558, ¶ 61. On remand, the court shall enter judgment holding West Bend's umbrella policy includes excess UIM coverage with limits of $50,000 per person and $100,000 per accident. *See* Wis. Stat. § 632.32(4m)(d).

¶ 29. We believe the result in this case flows logically from the premise established in *Rebernick*: Wis. Stat. § 632.32(4m) applies to umbrella policies that are excess over primary automobile liability insurance. We are bound by that holding. *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997). However, we also believe that our decision shows that applying the statute to umbrella policies leads to unsound results.

¶ 30. Wisconsin Stat. § 632.32(4m) clearly applies to primary automobile liability policies. It requires that insurers offer UIM coverage with minimum limits of $50,000 per person and $100,000 per accident. It further requires that insurers notify new policyholders that the UIM coverage is available. The notices will reach a general audience likely to include many who are unaware UIM coverage exists or who do not understand what it does. Thus, the statute mandates availability of a basic coverage and a notice providing information that will benefit many people.

¶ 31. An umbrella policy is a very different insurance product from an automobile liability policy. We have described the purpose of an umbrella policy as follows:

> One very important type of coverage in these days of potentially high verdicts is that provided by so-called umbrella or catastrophe policies. This coverage gives a financial security, as well as peace of mind, to the individual purchasing such coverage who is hopeful that he will never be involved in any substantial claim or lawsuit, but, if he is, is desirous of not losing the security it may have taken a lifetime to acquire.

*Oelhafen v. Tower Ins. Co.*, 171 Wis. 2d 532, 538–539, 492 N.W.2d 321 (Ct. App. 1992) (citation and some punctuation omitted). In other words, umbrella policies are designed to protect the insured's personal assets if the insured causes a catastrophic loss—or, in the case of umbrella UIM, if the insured sustains a catastrophic loss. Generally, umbrella policies have limits of at least $1 million.[7]

¶ 32. Because of the differences between umbrella policies and primary liability policies, the required notice and coverage offer mandated by WIS. STAT. § 632.32(4m) make little sense when applied to umbrella policies. To begin with, the minimum UIM cov-

---

[7] In this case, the West Bend umbrella policy had a $1 million limit. A review of insurance company Web sites shows $1 million is a common minimum limit for umbrella insurance. *See, e.g.,* http://www.statefarm.com/insurance/other/personal. asp (last visited May 6, 2008) (State Farm offers umbrella coverage written in increments of $1 million); http://www.geico.com/information/aboutinsurance/umbrella/ protect-your-future (last visited May 6, 2008) (Geico offers umbrella coverage starting at $1 million with up to $10 million available).

erage that must be offered bears no relationship to the limits for which umbrella policies are normally written. The minimum UIM coverage is $50,000 per person and $100,000 per accident, whereas umbrella policies are normally written in million dollar increments. The minimum UIM limit is too low to serve the purpose of an umbrella policy—protection against a catastrophe.

¶ 33. Further, notice to umbrella policyholders will reach a small segment of the population who, as a requirement of their umbrella policies, will already have underlying primary automobile liability insurance. They will already have received notice of the availability of UIM coverage in conjunction with their primary policy, and have either purchased that coverage or at least know about it. As a result, the information in the notice is, at best, redundant.

¶ 34. Our supreme court recently stated, "Wisconsin seems to be anomalous in interpreting a state statute that requires insurers to provide UIM coverage at a statutory minimum level as applying to umbrella policies." *Stone*, 308 Wis. 2d 558, ¶ 59. The result of our decision today suggests this anomaly should be revisited.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions. No costs.